FILED

1  John B. Kenney
   P.O. Box 7344
2  San Diego, California, 92167       2011 JUN 27  PM 2: 16
   (619) 269-1775
3                                     CLERK U.S. DISTRICT COURT
   John B. Kenney, In Pro Per (In Pro Se)   CENTRAL DIST. OF CALIF.
4                                          LOS ANGELES

5

6

7

8               UNITED STATES DISTRICT COURT,
               CENTRAL DISTRICT OF CALIFORNIA
9  JOHN B. KENNEY,                     ) Case No  CV11-05341
              Plaintiff               )          DMG (AJWx)
10      Vs.                            )
11 Japan or "Japan Inc.", The National Police Association, )
   Tottori Prefectural Police, Prosecutor Office of Tottori )
12 Prefecture, Kyoto Prefectural Police, High Court in )
   Matsue, Shimane Prefecture, Supreme Court of Japan, Tax )
13 Offices of Yonago, Yonago District Court, Judge Adachi, )
   yakuza syndicate, yamaguchi gumi, Aizu Kotetsu )
14 syndicate, Gunze Corporation, Yonago Shinyo Ginko )
15 (Bank), Tottori Ginko (Bank), Tokyo Mitsubishi / UFJ ) COMPLAINT FOR TORT
   Ginko (Bank), Kyoto Ginko (Bank), Sumitomo Mitsui ) DAMAGES
16 Bank & Credit Company, Yonago Kita Kotogakko, )
   Matsuda Family, JTB, HIS, and other Japanese Travel ) JURY TRIAL DEMANDED
17 Agencies to be named later, Tanaka Zeirishiya-san )
18 (Accounting Business) of Yonago, Toshiko Narita and the )
   Narita Family of Pachinko Parlor enterprises and related )
19 yakuza activities, Attorney Sagiyama, Attorney Osamu )
20 Ueyama, San-ei.net Total Systems Corporation of Matsue, ) Dept:
   Shimane Prefecture, Japan Postal Service, Sagawa ) Complaint Filed:      January 20, 2011
21 Takyubin (Express Delivery Service), Yoko Suda, Yu ) Trial Date:            Not Set
22 Kinutani, Mitsuru Seo, Kazue Kumamoto & Sokka )
23 Gakkai, Kayo Yamamoto, Shoko Katsube, Masahiro )
24 Shiyomi, People's Republic of China, Adam Huang, Lynn )
   Chen, Shelley Xiao, Eric Chow, Kriss Alexander Lange, )
25 (7/30/76) formerly of 425 Georgia, St. Louis, MO, )
26 Department of Homeland Security, Southern California )
   Fusion Center, National Security Agency, Central )
27 Intelligence Agency, Federal Bureau of Investigation, U.S. )
   State Department, Diebold, SAIC, DirecTV, AT&T, )
28 former Vice- President Cheney &President George W. )

               -  Page 1 of 52  -

PAID
JUN 2 7 2011
Clerk, US District Court
COURT 4812

Court Name: U.S. District Court
Division: 2
Receipt Number: LA019745
Cashier ID: jacash
Transaction Date: 06/27/2011
Payer Name: JOHN B. KENNEY

CIVIL FILING FEE
  For: JOHN B. KENNEY
  Case/Party: D-CAC-2-11-CV-005341-001
  Amount:           $350.00

MONEY ORDER
  Check/Money Order Num: 2040
  Amt Tendered:    $350.00

Total Due:         $350.00
Total Tendered:    $350.00
Change Amt:          $0.00

No refunds without original
receipt. Returned checks will be
assessed a fee of $45.00.

Bush, James Vath, Maurice Kamel, Michael Wardell,                          )
Christopher Herron, Manami Thurman, Cast Fix, Budonoki,                    )
Café in Yonago, UCC Coffee, Nichibei Eikawa Schools,                      )
General Union, Osaka Branch, Kyoto Jyosei Gakuin                          )
(Kyoto Young Women's Academy), Fujiro Tsujitani &                         )
businesses, Yonago, Office Marriage Inc., Partite Wedding                 )
Inc., Kobe, Dennis (?) of General Union, Jeff (?) of Notre                )
Dame University, Ken Mukai, Norman B. Kenney, Cheryl                      )
(?) his roommate of Lexis-Nexis U.S. Consulate in Osaka,                  )
Citibank Japan, Citigroup, AIA, AIG, MI 5, and MI 6,                      )
Justin Griffin, Hamish (?), Paul Dohery, General Union,                   )
Nation Orchard, JAPEX Trading, Shaheed Rupani, two                        )
French stalkers, State of Massachusetts Department of                     )
Revenue, The City of Los Angeles & Police Department,                     )
The City of San Jose & Police Department, The City of                     )
San Francisco & Police Department, City of San Diego &                    )
Police Department, San Diego Sheriff's Department, The                    )
County of San Diego Board of Voter Registration, The                      )
U.S. Postal Service, San Diego State University and                       )
Professor Matlin, Studio 819, Masayuki Ueda, Yukiko                       )
Ueda, City of Carlsbad & Police Department Dispatchers,                   )
City of Lorain, Ohio & Police Department, City of                         )
Cleveland, Ohio & Police Department, Organizing For                       )
America, The Democratic National Committee, The                           )
Democratic Party of San Diego, various Arizona Cities &                   )
Police Departments & Other Presently Unnamed and To Be                    )
Identified Individuals, Officials and Corporate Defendants and            )
Unnamed and To Be Identified Individual Employees of Said                 )
Corporations                                                              )
            Defendants.                                      )

Plaintiff JOHN B. KENNEY alleges:

1.     Plaintiff, John B. Kenney, representing himself in pro se, alleges upon personal knowledge and belief as to his own circumstances, and upon information and belief as to all other matters, that substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery as a result of trial proceedings, in support of the following:

2.     The Emperor has no clothes.    To believe we can allow any nation, or economic block, to continue unabated for decades on end to violate every concept and right we hold most dear, and to foster such a parasitic, amensalistic relationship with us without losing our

COMPLAINT FOR TORT

economic, political, social and military might, is shear folly.    America led because our ideas of freedom where the most brilliant and enduring.    We can clothe ourselves in the mantle of the leadership of Liberty again.    Let us do so from today.

Let us lead because we are just and fair and right.    An age free of many of our old fears is right here, right now before us.

Let us lead.

3.    Named Plaintiff and additional unnamed and to be identified Plaintiffs (hereinafter referred to collectively as Plaintiffs) have been and are being subjected to grave violations of some specific, and some of the most universally definable, recognized and obligatory standards of international law, including; prohibitions against torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention. Including; Japan's extreme, inveterate, near pathological customs of social, political and economic discrimination and oppression, and unfair and discriminatory business practices. Including; prolonged invasion(s) of privacy, stalking, monitoring and interference in Plaintiff(s) private affairs and universally recognized civil, social, political and economic rights, such that it constitutes violation of universal and obligatory standards, making these long term practices tantamount and synonymous with unlawful and undeclared detention and arrest. Including; for exercising his (their) right(s) of freedom of speech, association, and assembly, at the hands of Defendants through Japanese and American officials and private individuals acting under color of law in Japan and the United States and other foreign nations.    Including: creating protectionist, predatory, racist environments of fear, coercion, deceit, intimidation and denial of fundamental societal needs and services.

4.    To commit these violations of specific, universal, and obligatory standards of international law, Defendants willingly conspired with, and aided and abetted Japan and Japanese officials and persons acting in accord with Japanese and/or United States officials, with access to virtually all of Plaintiffs' private information, including private e-mail records, copies of email messages, e-mail addresses, user ID numbers, and other identifying information about the Plaintiffs and the nature and content of his (their) use of

various forms of private communication, electronic and telephonic communications, banking and insurance information, travel arrangements and numerous other private aspects of Plaintiffs' lives.

5.    This information, available only to the Defendants already named, or to be identified as discovery proceeds, was obtained directly through illegal means, or was voluntarily provided to Japanese and American officials through various agents, alter egos, and/or other affiliated entities, named herein, or to be identified as discovery proceeds, including but not limited to private e-mail records, copies of email messages, e-mail addresses, user ID numbers, and other identifying information about the Plaintiffs and the nature and content of his (their) use of various forms of private communication, electronic and telephonic communications, banking and insurance information, travel arrangements and numerous other private aspects of Plaintiffs' lives.

6.    These disclosures served and are continuing to serve as the basis for the acts of persecution and torture that occurred and are occurring as a direct result of the Defendants' activities.    By the Japanese and American officials obtaining these vast quantities of Plaintiff's private information nearly all encompassing in their nature and scope, and by the other Defendants aiding and abetting and/or conspiring to provide such information to Japanese and American officials, all Defendants knowingly and willfully aided and abetted in the commission of torture and other major abuses violating international law that caused Plaintiffs severe physical and mental pain and suffering.

7.    Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. ß 1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. ß 1350, and 28 U.S.C. ß 1731 regarding the rights of Protection for U.S. Citizens Abroad, because their injuries resulted from violations of specific, universal, and obligatory standards of international law as embodied in a number of treaty obligations binding on the United States and implemented domestically here in the United States by a number of statutes including the TVPA. Japan also has a Constitution and numerous laws that mirror much of U.S. law, including prohibitions against racial discrimination, violations of due process, invasions of privacy, assault and battery, stalking, etc.

8.  Other domestic laws violated: 28 U.S.C. ß 1983, (Multiple Constitutional and Civil Rights Violations & Conspiracy), 42 U.S.C. ß 14141, (Patterns & Practice), 18 U.S.C. ß 241, (Conspiracy Against Civil Rights), 18 U.S.C. ß 242, ((Deprivation of Rights Under Color of Law), 15 U.S.C. ß 1681, (Fair Credit Reporting Act), 42 U.S.C. ß 3631, (Interference with Right to Fair Housing).

9.  Defendants' conduct also violates California state laws, including, CA Penal Code ß 646.9, & Civil Code ßß 1708.7 & 527.6, prohibitions against stalking, CA Penal Code ß 132-141 & 182-185, falsifying evidence & conspiracy and/or aiding and abetting, Civil Code ßß 51 & 52, on various civil rights violations, assault, battery, false imprisonment, intentional infliction of emotional distress, negligence, negligent supervision, discrimination and the California Business & Professions Code ß 17200.

## JURISDICTION

10. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. ß 1331 (federal question jurisdiction), &/or 28 U.S.C. ß 1332 (Diversity), &/or 28 U.S.C. ß 1391 (a)-(f) (Diversity), &/or 28 U.S.C. ß 1605 (a) (Exceptions to Foreign States Immunities), as well as 28 U.S.C. ß 1350 (Alien Tort Statute) and 28 U.S.C. ß 1350 (Torture Victim Protection Act). The Alien Tort Statute provides federal jurisdiction for any civil action by an alien, or a U.S. citizen, for a tort only, committed in violation of the law of nations or a treaty of the United States. The Torture Victim Protection Act supplements and confirms the ATS by providing federal court jurisdiction for acts of torture, as defined by 28 U.S.C. ß 1350. The Electronic Communications Privacy Act, 18 U.S.C. ß 2701 et seq., provides federal jurisdiction for civil claims arising from unauthorized disclosure of electronic communications and customer information.

11. Jurisdiction over foreign states is proper under 28 U.S.C. ß 1605 (a) (Exceptions to Foreign States Immunities), 28 U.S.C. ß 1350, (Pursuant to U.S. "treaties" and the "law of nations").    Additionally, the various treaties between the United States and Japan, provide apply grounds for jurisdiction over the foreign state of Japan itself, including, among other treaties, the U.S. – Japan Treaty of Friendship, Commerce and Navigation, ("Friendship Treaty") in force since 1953, to the U.S. – Japan Partnership for Growth,

ratified in 2001.    All treaties, prohibit the types of violations against Plaintiff John B.
Kenney perpetrated repeatedly by officials of Japan under the color of law, including
torture, physical abuse, crimes against humanity, discrimination, harassment, absence of
due process, right to own and operate a business free of interference from officials, such
as over taxation, freedom of travel, blocking communications and invasion into business,
private matters and personal property (Friendship Treaty, Arts. I, VI, VII & XI), to be free
from "unlawful molestation" (Friendship Treaty, Art. II), to have contracts with
businesses and individuals honored by Japanese Courts of law (Friendship Treaty, Art.
III), to have "capital" and revenues stolen and ratified in blatant acts of discrimination
(Friendship Treaty, Art. V).

12.    This Court also has supplemental jurisdiction over claims arising from violations of state
law because, pursuant to 28 U.S.C. ß 1367, the facts in the claims arising from state law
are so related to the Plaintiffs' claims under federal laws that they form part of the same
case or controversy under Article III of the United States Constitution.

VENUE

13.    Assignment and venue in the Central District of the U.S. District Court is proper pursuant
28 U.S.C. ß 1331 & 1332, Federal Issue and Diversity, as well as 28 U.S.C. ß 1391 (a)-(f).
A substantial portion of the events giving rise to this complaint occurred in this district.
Equally important, the primary Defendant, Japan, the Defendant which is the link
between, and the source of most of the predatory and discriminatory torture being
directed at this Plaintiff, is located in, does business in, and has major business contacts
with this district, as its Consulate is located at 350 S. Grand Ave. Los Angeles, CA
90071. Additionally, the Consulate General of the People's Republic of China is in Los
Angeles, at 443 Shatto Place, Los Angeles, CA 90020.    Both of the two major U.S.
Corporations, Citigroup and AIG, also have major presences in the Central District, as do
Bank of Tokyo- Mitsubishi, UFJ, and Sumitomo Mitsui.    Other named and unnamed
Defendants are similarly subject to the jurisdiction of this court by virtue of their
governmental, and or association, communications and networks to the Department of
Homeland Security Southern California Fusion Center, other security networks, private

COMPLAINT FOR TORT

and corporate ties and/or business contacts and activities in this jurisdiction or associations, conspiracies, and/or unlawful communications with various other Defendants in this district (and division).

## PARTIES
### Plaintiffs

14. Plaintiff John B. Kenney is a subject, citizen, and resident of the United States. He sues on behalf of himself for the injuries, including severe pain and suffering, he has endured as a result of his torture, cruel, inhuman, or other degrading treatment, intimidation, repeated assaults and battery, and arbitrary surveillance, obstruction, invasion of privacy, intervention such as to be tantamount to arrest and prolonged detention inflicted upon him as a result of the various Defendants actions aiding and abetting Japanese government officials in committing these major human rights abuses. Specifically, John B Kenney has been stalked and unlawfully and arbitrarily detained, falsely accused, tried and deprived of his property, access to his bank accounts, ability to sell his property, intimidated by police, and falsely accused of crimes enacted against himself, denied due process, and equal protection in Court, assaulted and battered, by yakuza and their agents and members of the Japanese, United States, Chinese and United Kingdom secret services, intelligence agencies and/or police or security apparatus. He also sues for compensation for severe economic damage he has suffered, for having ceded control his own assets to Japanese agents, and being repeatedly discriminated against in court and in his work environment and society at large. He also has suffered extreme emotional distress and financial hardship.

15. Additional Plaintiffs temporarily designated as Presently Unnamed and To Be Identified Plaintiffs are citizens of China currently living in China or in exile in other countries, such as the United States, who were arbitrarily detained, arrested, tortured, subjected to cruel, inhuman, or degrading treatment or punishment, and/or subjected to forced labor, as a result of Defendants actions in aiding and abetting these violations of United States and international law, including federal and state laws that provide civil actions for Defendants acts.   Additional information about how the Defendants may be responsible

for their abuse will be obtained during discovery and described in greater detail during these proceedings. Their inclusion in this lawsuit is critical both in order to identify the extent of the Defendants' role in enabling these abuses, as well as to curb, prevent and remedy current corporate practices of the Defendants that are directly responsible for these abuses. Such Plaintiffs may also include others located outside of Japan who have been or are currently being adversely affected by the Defendants' practices.

Defendants

16. Defendant Government of Japan (Hereafter "Japan" or "Japan Inc.") has its principal place of business in the State of California in Los Angeles and has been located in California since 1948. The Consulate of Japan is located at 350 S. Grand Ave. Los Angeles, CA 90071.

17. Japan, &/or Japan Inc., is well known for her xenophobic, discriminatory, predatory and protectionist economic, social and political practices, as well as crimes against humanity, human experimentation, a "deep rooted" discriminatory mind set (various United Nations' Reports) and repeated, serial denials of her own criminal past, discriminatory crimes against humanity, blatant discriminatory remarks of high ranking government leaders, including at the cabinet level and the Prime Minister, and other acts against the laws of nations.    Plaintiff(s) have suffered much damage, pain and suffering and mental and emotional distress. Plaintiff(s) has been tortured and subjected cruel, humiliating and inhumane treatment at the hands of Japan Inc.

18. Japan &/or Japan Inc. must be held responsible for all herein ongoing abuses, as it has continued to exercise substantial control and oversight over all of its related instrumentalities and agencies, and subordinate governmental bodies, and even its multitude of private citizens and corporations, who are also sued in their independent capacities, as well as in collusion and/or subordinate to the government of Japan. The various official agencies are, amongst others to be named as discovery allows: (a) The National Police Association, (b) Tottori Police, (c) Prosecutor Sasaki of Tottori Prefecture, (d) Kyoto Prefectural Police, (e) the High Court in Matsue, Shimane

Prefecture for the Chigoku Region, (f) the Supreme Court of Japan, (g) the Tax Offices of Yonago, the Yonago District Court, and (h) all of the Judges who have commanded discriminatory and abusive decisions against the Plaintiff(s) and the law of nations, including Judge Adachi of Yonago, Tottori Prefecture Japan.

19.    Japan &/or Japan Inc. must be held responsible for all herein ongoing abuses, as it has continued to exercise substantial control and oversight and jurisdiction over its many private individuals and/or corporations. This includes supervision and control of policy and legal decisions made by its many subordinates, including issues and activities relevant to the subject of this complaint, where the various entities reported directly to and took direction from the Japanese Government, or agents thereof. Japan Inc. was/is uniquely positioned to review and approve, if not directly orchestrate, the specific practices and policies that led to the abuses against the Plaintiff(s). This line of authority and accountability indicates that although some corporations and/or individuals make independent actions, they are/have been managed and controlled actually and ultimately by Japan Inc.

20.    Given Japan Inc.'s history and practice of a closed door, discriminatory and internationally unlawful domestic economy, and nationally targeted and subsidized industries subordinate to National Policy control, the following private individuals, businesses or corporations, are under the jurisdiction and control of Japan Inc., and in actuality are at least in large part merely business entities, partners, alter egos and/or agents of Japan Inc. and subject to the control and supervision of Japan Inc.   They are sued as subordinates and collaborators to Japan Inc., and are additionally sued in their private capacities: (a) The yakuza network in its entirety, but specifically, (b) the Yamaguchi gumi headquartered in Kobe and Yonago Japan, and the (c) Aizu Kotetsu Syndicate, headquartered in Kyoto, as well as, (d) Gunze Corporation, (e) Yonago Shinyo Ginko (Bank), (f) Tottori Ginko (Bank), (g) Tokyo Mitsubishi / UFJ Ginko (Bank), (h) Kyoto Ginko (Bank), (i) Sumitomo Mitsui Bank & Credit Company, (j) Yonago Kita Kotogakko and its Owners, (k) Tanaka Zeirishiya-san (Accounting Business) of Yonago, (l) Toshiko Narita and the Narita Family of Pachinko Parlor enterprises and related

yakuza activities,    (m) Attorney Sagiyama of Yonago, (n) Attorney Osamu Ueyama of Osaka, (o) San-ei.net Total Systems Corporation of Matsue, Shimane Prefecture, (p) Japan Postal Service, (q) Sagawa Takyubin (Express Delivery Service) (r) Budonoki Café in Yonago, (s) UCC Coffee, (t) Nichibei Eikawa Schools (u) General Union, Osaka Branch, (v) Kyoto Jyosei Gakuin (Kyoto Young Women's Academy), (w) Fujiro Tsujitani and his businesses in Yonago, (x) Office Marriage Inc. of Tokyo, (y) Partite Wedding Inc. of Kobe and Tokyo, (z) JTB (Japan Travel Bureau), (aa) H.I.S., and (bb) other travel agencies in Japan.

21. Additionally, the following individuals are sued for their participation with Japan Inc. in its oppression of Plaintiff(s): (a) Toshiko Narita of Yonago and the Narita yakuza enterprise group, (b) Yoko Suda (6/30/76) of Yonago, Matsue and Yamaguchi, a prostitute for the yakuza, (c) Yu Kinutani, of Yonago, (d) Mitsuru Seo of Kyoto, working in collaboration with U.S. agents, (previously of Tokyo), (e) Kazue Kumamoto of Sokka Gakkai in Osaka, (f) Kayo Yamamoto of Osaka, and China, (g) Shoko Katsube of Kaike, Yonago, and (h) Masahiro Shiyomi of Kyoto, an Aizu Kotetsu Syndicate associate.

22. The Government of the People's Republic of China (Hereafter "China") and her agents, who have worked in collusion with the government of Japan in abusive violation of the law of nations to harass, torture, abuse and discriminate against the Plaintiff(s).

23. Defendant China has been, and continues a long process of collusion and conspiracy with the Government of Japan designed towards unfair business practices, and obstructing the entry of foreign goods, services and individuals, particularly targeted at the United States and its businesses and citizens. It has its principal place of business in the State of California in Los Angeles at the Consulate General of the People's Republic of China in Los Angeles, CA at 443 Shatto Place, Los Angeles, CA 90020.

24. Additionally, the following individuals are sued for their participation with The Governments of China, and/or Taiwan and/or Hong Kong and Japan Inc. in its oppression of Plaintiff(s): (a) Adam Huang of Matsue, Japan, Los Angeles, CA, Taiwan, and perhaps now in Texas, (b) Lynn Chen of Brisbane Australia, and formerly of Taiwan, (c) Shelley

COMPLAINT FOR TORT

Xiao of Shanghai, and Yonago, Kyoto, Tottori-shi, Japan, (d) Eric Chow of La Puente, CA, and (e) Kayo Yamamoto of Osaka and China as mentioned above.

25. Whether unknowingly or willfully, whether in collusion, or because they have been misled, Defendant Government of the United States of America has collaborated with Japan Inc. in oppressing Plaintiff(s). Whether while Plaintiff(s) have resided as foreign residents in Japan, after returning to the United States, or even in other foreign nations the United States has contributed to the oppression, harassment, cruel and inhumane treatment of Plaintiff(s) such that the constant surveillance and harassment constitutes torture. The United States has a long history of being duped and/or outplayed by Japanese secret police, ultranationalist and yakuza, particularly on that nations soil. There is a primarily one-way street of huminit exploitation of U.S. assets both in Japan and in the United States, while Japan continues to escape any meaningful penalty for its obstinate, obdurate refusal to allow universally accepted standards of law to prevail, or any substantial opening of its markets. Japan Inc. has even succeeded in having our nation apologize to its citizens for "war hysteria" and "racial discrimination" during WWII after it attacked our nation unprovoked in a "day of infamy" with the assistance of 1,000s of Japanese and Japanese American agents residing in the U.S.   The United States continues on this unilateral path of playing sacrificial host to the predatory, zero-sum intentions of an amensalistic, parasitic Japan, with a clear vision of usurping, if not obliterating America's Asian economic, political and cultural influence.

26. A short list of those U.S. individuals working in collaboration with Japan in Japan includes the following: (a) Kriss Alexander Lange, (7/30/76) formerly of 425 Georgia, St. Louis, MO, 63135, and Yonago, Japan, presently believed to be in Matsue, (b) James Vath, formerly of the Navy and Yonago, Japan, (c) Maurice Kamel of Hiroshima, Japan, (d) Michael Wardell of Tokyo, Japan, (e) Christopher Herron of Sakyoku, Kyoto, (f) Manami Thurman of Cast Fix in Osaka, Japan, (g) Dennis (?) of General Union in Osaka, (h) Jeff (?) of Notre Dame University, 2003-2005, in Kyoto, Japan, (i) Ken Mukai of Oki Island, Japan and Los Angeles, CA, (j) Norman B. Kenney of Carlsbad, CA, and (k) his

COMPLAINT FOR TORT

(former?) roommate Cheryl (?) employed by Lexis-Nexis in 2008, as well as Adam Huang and Eric Chow as mentioned above.

27. Some of the U.S. entities that collaborated with Japan Inc. in the oppression and torture of Plaintiff(s) include: (a) The U.S. Consulate in Osaka, (b) Citibank Japan, an international subsidiary of Citigroup, (c) Citigroup, (d) AIA, an international subsidiary of AIG until its recent sale, and (e) AIG

28. At least some agents of MI 5, or MI 6 or some other network of British Commonwealth Intelligence include: (a) Justin Griffin (aka Giffin) of the Kyoto and the U.K., (b) Hamish (?) of Chris Masters in Kyoto, Japan and New Zealand, (c) Paul Dohery, of NichiBei in Osaka, and of the U.K., (d) the General Union as mentioned above, (e) Nation Orchard of JAPEX Trading, formerly in Sasayama, Japan, and New Zealand, (f) Shaheed Rupani of Kyoto and Canada, and (g) two French stalkers in Indonesia.

29. Since this Plaintiff has returned to the United States, whether to visit, or for more extended lengths of time, the harassment, abuse, torture, cruel and inhumane treatment, violation of the laws of nations, as well as fundamental Constitutional rights has continued.    Obviously U.S. entities are working in collaboration, presumably being duped, in oppressing this Plaintiff.    Among those know entity or official violators of norms against racial discrimination, abuse, and torture are: (a) Above mentioned Citibank / Citigroup, (b) AIG, (c) Department of Homeland Security, in particular through its Southern California Fusion Center, (d) National Security Agency, (e) Central Intelligence Agency, (f) Federal Bureau of Investigation, (g) U.S. State Department, (h) Diebold, (i) SAIC, (j) DirecTV, (k) AT & T, as well as (l) former Vice- President Cheney, and (m) President George W. Bush.

30. Among the state and local agencies that have networked in are: (a) State of Massachusetts Department of Revenue, (b) The City of Los Angeles and its Police Department, (c) The City of San Jose and its Police Department, (d) The City of San Francisco and its Police Department, (e) The City of San Diego and its Police Department, including its helicopter unit, (f) the San Diego Sheriff's Department, including its helicopter unit, (g) The County of San Diego Board of Voter Registration, (h) The U.S. Postal Service, (j) San Diego

State University and Professor Matlin, (k) Studio 819 and its owners Masayuki Ueda and Yukiko Ueda, 819 University Ave., San Diego, CA, (l) the City of Carlsbad and its Police Department Dispatchers, (m) The City of Lorain, Ohio and its Police Department, (n) the City of Cleveland, Ohio and its Police Department, (o) Organizing For America, (p) The Democratic National Committee, (q) The Democratic Party of San Diego, and (r) various Arizona Cities and their Police Departments.

31. The additional, presently Unnamed and To Be Identified Corporate Defendants listed in the caption heading of this case are presently unnamed and to be identified corporate entities that contributed to or aided and abetted the violations of international law suffered by Plaintiffs as set out in this complaint, either directly or indirectly via their corporate ties. Additional information about these unnamed entities will be obtained during discovery, allowing the Parties to ascertain the exact nature and extent of the relationships between these unnamed entities and the already identified Defendants. Identifying information about them and the role they played in the abuses will be identified and described in greater detail during the course of these proceedings.

32. The additional, presently Unnamed Individual Defendants listed in the caption heading of this case are presently unnamed and to be identified employees of the Defendant companies, and/or other persons whose individual actions contributed to or aided and abetted the violations of international law suffered by Plaintiffs as set out in this complaint. Identifying information about them and the role they played in the abuses herein is expected to be identified and then described in greater detail during these proceedings.

## STATEMENT OF FACTS

33. The Nation of Japan has a long uninterrupted history of Imperialistic racism.    To say Japanese is to name a language, a nation, a race of people, and a culture over 1,200 years old. (Though most will claim their Emperor line goes back over 2,500 years, if not to the beginning of sex time.) Numerous international NGOs, including Human Rights Watch, Amnesty International and multiple United Nation Reports document the "deeply entrenched" "xenophobic and racist" environment.

34. By its own reckoning it is the "most pure race" in the world. Its immigrant population had "grown" to almost 1.5%, before they started paying Japanese Brazilians to go "back home" to Brazil if they promised to never come back.    Of that "1.5%" though, well over half are actually 3rd, 4th or even 5th generation Korean-Japanese, or Chinese-Japanese, many brought over as slave labor during WWII, some to work at Prime Minister Aso's father's slave labor concentration camp.

35. Just a mere decade ago we still feared the Rising Sun of Japan and "Trading Places" with our former foe.    Japan hasn't changed, it has just learned to better buy-off, or otherwise quash our complaints.

36. Today China grabs all of the shrill spotlights, though China's exports to the US in 2010 equaled $252 billion, while Japan's equaled $196 billion in 2009, (state.gov) against $51.2 billion in U.S. imports, or a $144.7 billion deficit vis-à-vis Japan.

37. What is more of that total of $252 billion in exports from "China" much of it is actually from "Japan" which is one of the greatest investors in China FDI, of which over "65%" of their products are "exported to overseas markets", with the USA being the number one target for these goods.    Japan also sends large quantities of investments and distribution routes in and out of Hong Kong, where they are much more difficult to track and account for value added aspects.    Finally, in recent years Japan runs up another $8 billion or so in exports through Mexico maquiladoras, screw-driver operations for import duty free Japanese parts to be slapped into finished goods and then dumped into the U.S. market as "Mexican" goods.

38.  In short, all is not as it seems.    Japan is still the #1 beneficiary of trade with the USA
     and still runs the most one-sided parasitic, amensalistic relationship with a host nation it
     will bleed dry if we don't defend ourselves.

39.  But even more stunning is a quick look at the comparative quantities of Foreign Direct
     Investment. (FDI) U.S. FDI in Japan is a paltry $101 billion, (Dept. of Commerce) while
     Japan has well over $260 billion invested in the U.S. Almost a 3 to 1 ratio for an
     economy which is one half to one third the size of our own. What is more, the #1 home
     for international FDI is the USA with over $2.6 trillion in FDI at home, while Japan
     comes in at #24 with $161 billion (cia.gov; CIA World Factbook). That's #1 for the #1
     economy in the world, and #24 for the 2nd or 3rd largest economy in the world. Does
     something seem rather racist to you as well?    China ranks #9 with $574 billion FDI at
     home, or almost 3 times that of Japan, an advanced "Western economy".

40.  In fact ALL of the Asian Tigers, including China, are merely mimicking the abusive
     one-sided trade relationship Japan sucks out of the USA. Which begs the question we
     were asking and then suddenly forgot about 10-15 years ago: With "allies" like that, who
     needs enemies?    (There are also numerous well-documented incidents of Japan bribing
     other nations to expel American forces from their land, so Japan can keep the umbrella
     and economic boost of our Armed Forces for a pittance. In fact there are also numerous
     incidence of intellectual property theft of top-secret military material, often with China as
     the ultimate home for the ill-gotten technology.) In peacetime Japan has accomplished
     more towards her goal of an Asian "Co-Prosperity Sphere of Influence", "Expel the
     Barbarian, Revere the Emperor", than their greatest military successes ever
     accomplished. Economics is the modern day warfare.    The Geneva Convention on Trade
     has never even been read, let alone adhered to.

41.  So it should come as no surprise to hear that this Plaintiff has had to endure much during
     his time in Japan. So be it.    But when one's property, finances, business, physical safety,
     even one's psychological fortitude is put under a non-stop assault, Japan is resorting to its
     habit of inflicting crimes against humanity upon any who are not of the "pure" race, who
     stand in the way of their total conquest, body, mind and soul. (And a tentacle or two from

Japan Inc.) This is against the law of nations.    And when one's own nation, home, family and friends join in on the illegal conduct, with multiple redundancies of surveillance, harassment and abuse, how could this be anything but torture, extreme racism, cruel and unusual, inhumane and humiliating?    I was almost broken once.    I have survived.

42.    The first time the racist discrimination of Japan came to an extreme head was in 1997, when Yonago Kita High School, the school my company NICEnglish had been supplying a teacher to since 1991, decided it would attempt to steal the "homestay" program I had set up with a like minded school high school in Australia, St. Mary's HS.    I had proposed to Kita HS that they set up a "sister school" relationship with the school in Australia I had a three year relationship with, with my NICEnglish company making all the arrangements in between, including supplying all of the English lessons, host family arrangements, and would accompany the Japanese students to Australia.    All seemed well. Australia's St Mary's HS agreed. Kita HS agreed.

43.    Then JTB (Japan Travel Bureau) entered the picture.    They sent Mr. Matsuda, the Owner of Kita HS and one of the Corporate Officers at Yonago Shinyo Ginko (Bank which is to play a role in attacking me again later.) to Australia on an extremely low budget. He asked the Principal there to drop me and sign a new contract with him. She refused. Back in Japan he threatened to not pay me the final 40% installment of the trip with 15 students and two teachers, though I had already incurred 70% of my costs. I said I would go just the same, and tell all of the students and parents I was going at a loss. He paid the day before we were to depart for Australia.

44.    Things cooled off a bit, but were still quite high tension when we returned from Australia. Oddly enough all of the students passports were stolen from my bag while we were in the post office on the first day buying stamps for post cards.

45.    Just after I returned to Japan a Toshiko Narita entered my school. She is a "Korean" national though she is 3rd generation born in Japan, so I felt some simpatico towards her position as one who is likewise discriminated against. I was not aware of it at the time, but she is also part of a yakuza group, the yamaguchi gumi.

46.   This family manipulated its way into my homestay program, and then caused so many
problems that the program fell apart.    They sued me for over 4 years. The Judge Adachi
of Yonago District Court decided I was slave labor to them and owed them back all the
money I had charged for three persons to go to Australia, one for over six months.    The
decision was made without my even being allowed to file my closing arguments, a court
date canceled after I drove 5 hours from Kyoto where I had moved to avoid the multiple
thefts, attacks on my car and reputation and apartment, etc.    This family became friendly
with my staff, and had one Lynn Chen from Taiwan claim I had sexually assaulted her.
Later she left an apology letter in her emptied apartment, which she had left in the middle
of the night.

47.   About this time I was burglarized numerous times, six of which I reported to the Yonago
Prefectural Police. They were blaming me for crimes against me, as they were to do later
as well. Yoko Suda became my local girlfriend, she wanted to get married, have me buy a
big life insurance policy form her mother, the insurance agent, but refused to move to
Kyoto where I was spending most of my time. Later I found out her story about being a
pharmacist was false and that she was actually a prostitute for the yakuza as well.    She
spied on and lied to me perpetually. My home and cell phone were tapped or monitored,
the Tottori & Kyoto Prefectural Police and the NPA, followed most every where I went
and I got many, many "parking tickets" which in Japan means you lose your license even
though you pay them.    No one else would get them but me.

48.   James Vath and Yu Kunitani worked in collusion to break into my company, steal from
me and caused damage to one of my apartments. While Michael Wardell, of Tokyo was
offering me over $120,000 for my NICEnglish business, Kriss Lange broke a contract
with me, stole some of my students and the largest contract I had and then assaulted me
on the very day I found out the Supreme Court had denied my civil suit challenge against
him and Kita HS though that assault day was the first time I had seen him in almost two
years. Michael Wardell had known my "girlfriend", Yoko Suda the yakuza prostitute,
though they both claimed they had never met before.    He disappeared after Kriss stole
my business. So did she. Kayo Yamamoto invited me to China, where she then told me

-  Page 17 of 51 -

she had a new boyfriend. I was monitored, had my ATM card stolen, possibly by Kayo, and entrapped or harassed everywhere I went.   It was incredible.   I really thought I was in a bad movie.

49.   Tottori Prefectural Police and the Prosecuting Office, namely Sasaki-san, blamed me again for the assaults & batteries against me. They grilled me on three separate occasions, one for over eight hours on having "stolen" textbooks from Kriss Lange with my NICEnglish stamps on them, and which had previously admitted in civil court he had stolen from me.   The Yonago District Court, the High Court in Matsue and the Supreme Court all ignore the piles of evidence and even Japanese law and brought down a blatantly racist judgment against me in favor of Kita HS. Kriss assaulted and battered me.

50.   During this time various persons were guilty of spying on, stealing and burglarizing from me, including Shoko Katsube, Shelley Xiao, Fujiro Tsujitani, the daughter of owner of Budonoki café, and UCC Coffee, and the Yonago Tax Office which overcharged me repeatedly.   In 2001 & 2002, my Yonago accountant, Tanaka Zeirishiya-san, managed to claim my company made over 20% more revenues than it actually did, and that I had received over $40,000 more in pay than I did.   I lost over $100,000 that year to thefts and assaults on my property.   The Yonago Ginko, the local bank had one employee come in for two weeks and then quit as my bankbooks kept getting stolen. The bank was surprised to find that I had kept some of them out of the safe, so they were stole from my bag, probably by Yoko Suda, several days later.   She later sent me some packages via Japan Postal Service, but they were stolen as well. They apologized.   Along those same lines Sagawa Takyubin, a company with yakuza connections and a history of being involved in bribery and political scandals, twice "lost" my credit cards sent to me from Australia by ANZ.

51.   Adam Huang of Taiwan, China and Seattle and LA, California, was tapping my telephone conversation, perhaps more. He was in league with a Randy (?) from East West head hunting services out of Tokyo.   The General Union, including Paul Dohery of the U.K., Hamish from New Zealand, "Dennis the Menace and Ya-Ya from Yemen were not only harassing me at work, they had entered my staff in Yonago, stalked and monitored

me and were instigating my workers to strike and steal from me. Nichibei Eikawa Gakko
was bugging their rooms, as well as invading computer and e-mail accounts and
monitoring cell phone calls.

52.   I weathered the storm. I thought it would finally be over.   I sold 90% of NICEnglish to
Maurice Kamel of Hiroshima and just went back to Yonago once a month or so to take
care of my management duties.   Maurice betrayed me and gave my revenues to Hiroto
san. Her lawyer, Sagiyama, conspired with my lawyer to steal my revenues from me
AND take half of the 10% of the near $100,000 I had invested in the building when they
had me evicted.   I reported my lawyer Osamu Ueyama and Sagiyama to the Bar
Association, but they blamed the other foreigner, though it was the landlord and her
lawyer who had stolen all the money, with my Japanese lawyer aiding & abetting them.

53.   I decided to give up on Yonago and started to bid on foreclosure property in Kyoto.
Yonago Shinyo Bank pulled another one on me and wouldn't let me use my ATM card,
claiming I was using the wrong PIN number. A fraud to be repeated by Citibank in the
USA several times later in 2007 and 2008.   I would have to drive back to Yonago to
personally get my money out of the bank. All other branches in Yonago had refused to
allow me to open an account, claiming something about my passport, though I'd already
been in country for over 10 years with other bank accounts.   I had already taken the
Yonago Shinyo Banks officer, Mr. Matsuda to court, when his Kita HS illegally head
hunted one of my teachers.

54.   In Kyoto it continued fairly unabated. Mitsuru Seo, a girlfriend from my past showed up
again. She and a guy Jeff (?) from Kyoto Notre Dame University would stalk me all over
town.   My e-mails were being intercepted for years by then, so every time I thought I
might need some one new and start fresh, they would get scared off.   I fell back in with
Mitsuru, though I knew she was spying on me.   Later she got almost abusive. Setting me
up just so I could be monitored, or tracked, or would cancel other plans.

55.   I came to the USA in 2004 to work against electronic voting. A Kazue Kumamoto was in
contact with me almost daily then.   She was fro Sokka Gakkai, a conservative political
party in Japan I found out later. She also was spying on me, including I once caught her

-   Page 19 of 51 -

going through one of my bags.   I broke it off.   It was a familiar pattern.   My every
movement was followed via a "girlfriend" who was actually working dual purposes,
while any real contact with real uncorrupted persons was quickly shut off.   I became
nearly desperate to find some thing not infected.   Japan has a history of using their
women as "dike" against the impurity of foreigner.   The UN often writes them up for
unequal pay, lack of rights, unequal opportunity etc.

56.    A new crop moved in. Nathan Orchard of Japex overcharged me for an auction vehicle.
Then he sabotaged the car just as the Kyoto Police were taking my license again. Then he
stole a new clutch I had flown in from the USA from me. Then he booby-trapped my car
so the gas tank leaked and it almost exploded. The judge went against me again. Said
since Nathan had returned the stolen clutch from me, which I didn't need, by putting it
back in my car, all was forgiven. Forget about the $1,400 and 6 months I had to do
without the car he had overcharged me for.

57.    Justin Griffin, Hamish, Shaheed Rupani and some other MI 5 or 6 Commonwealth
crudes, as well as Christopher Herron monitored my cell phone (Probably more, I found a
mini radio transmitter crushed in front of my house one day.) and stalked me.   The
former both helped me come to America so "V" could do some interrogations and some
voice recognition monitoring on me. Manami Thurman of Cast Fix did the same.   Gunze
Corporation seemed to know much more about my life than was possible, including
simple mundane things I would do earlier in the day.

58.    Citibank cancelled my credit card though I had over $80,000 in an account with them.
Sumitomo Mitsui and Kyoto Ginko and Tokyo-Mitsubishi/UFJ did like wise.   Only
Kyoto Ginko outright told me, if I wasn't Japanese, I couldn't get a card.   Including
those "Koreans" who were born in Japan.   Discrimination is OK.   Sumitomo Mitsui
would make me sign the same documents over and over, would refuse to accept my card
and make me wait in line again and again.

59.    Then things started to get scary. In 2007 after being stalked in Indonesia, including by a
couple of French guys, I got run into oncoming traffic while riding my motor scooter.   It
was quite odd. The guy ran into me twice from the side, it seemed quite intentional to me.

COMPLAINT FOR TORT

4 months later Kriss Lange attacked me while I was half naked in a public bath the very day I lost my Supreme Court case against him and Kitanaiko.    6 months later I was smashed in the face by Masahiro Shiyomi, an agent for Aizu Kotetsu, the local yakuza syndicate. I accepted $100 for my ruined shirt, split and swollen lip and nose and my chipped tooth, and an apology from him, because it was the first time ever the police didn't actually accuse me of something.

60.    The police took me in 5 times that year. Three times after the Kriss Pearl Harbor attack because he claimed I had stolen BACK the books he had already admitted in court he had stolen from me, with my NICEnglish stamps on them. Two times for "stealing bikes" one of which was given to me by a friend. When I e-mailed him and the US consulate and got a reply back, I was let go by the police after one of them smashed into me with his shoulder. I was being followed by helicopters, even my girlfriend Miki Shimada knew it was true.    We were stalked on the highway by a yakuza looking vehicle with "No Thank You- No Thank You" plates on it from sin-ei.net Total Systems KK out of Matsue.    Its a network system and communications construction and security company.    While waiting in my car for Miki at a train station I was attacked for the 5th time in just a little over one year. Kyoto Jyosei Gakkuin fired me because I told them someone was erasing the work I was doing on their computer. It was erasing both the work I stored on their computer and on my thumbdriver. Partite Wedding of Kobe and Office Marriage of Tokyo did the same because I didn't like it that people were following me into the restroom, including women staff, one of my co-workers was harassing me with coded messages from people who were invading my privacy and I was being monitored everywhere.

61.    I was 48 years old and had been in one fight in my life as a kid up to that point.    5 times in just over one year. Once by the police. My company was gone, girlfriends were yakuza or spy whores, I'd lost $100s of thousands of dollars and I couldn't hold down a job and banks with $10,000s of my money wouldn't allow me a credit card.    I owned property in Japan but they wouldn't let me use my name on it.    Then when I created one of their "Japanese names" they wouldn't let me take my money out of the bank because that's not

what my passport said. Japan Inc. was a vicious racist criminal enterprise intent on driving me mad and/or out.

62. I decided I would explore going to university in the States while continuing my work in Japan. I came to California in September 2007 and stayed at my brother's home. To my chagrin I discovered the police and helicopters were still monitoring me. I purchased a video camera so I could start recording at least some of the abuses and torture I was enduring. My Citibank card wouldn't work though I had been assured it would work at any authorized ATM anywhere in the world.

63. I went back to Japan and was told again, it would work OK. When I returned to the US in January, 2008 it didn't. I was stalked by the police in LA and Carlsbad on MLK weekend and in Arizona two weeks later with my girlfriend, Miki Shimada. The Carlsbad dispatchers and on information and belief the Department of Homeland Security Southern Fusion Center working with CPD dispatchers staked me out, handcuffed me, interrogated me and searched my body and possession in violation of several Constitutional rights. My brother and his girlfriend were in on the cover up, if not the set up. A book full of documents from that original yakuza racist court decision against me and the law was stolen from his apartment, apparently by Cheryl, who had decided to arrange every closet she could get her hands on. Lexis- Nexis the vote purging company of Florida in 2000 decided to hire her just as I came to town. Diebold the vote stealing company of Ohio in 2004 decided my Citibank ATM card wouldn't work. Citigroup decided that was fine and dandy with them too. Let the police harass me for awhile, refuse me my money from my bank account just like they do in Japan and... Who knows? Maybe he'll just kill himself? Where the hell was I supposed to go? What do I have to do just to keep and actually be able to get a hold of my own money? DirecTV scammed my for $350 on a two year contract I wasn't informed of, then stole the money from Miki Shimada's credit card on a pretense, though she had nothing to do with the contract. AT&T jumped in on that scam by refusing me a telephone line at the rate I applied for. Then they tried to ruin my credit for the next couple of years, just as the IRS, the state of Massachusetts and AIG / AIA have done as well.

64. Ueda Masayuki and Yukiko Ueda of Studio 819 refused to allow me to stay in their hotel as a foreign resident, though I showed them my valid permanent resident visa in Japan. They ran a credit report and denied me fair right to housing because of the above mentioned slanders. I showed them I had thousands of dollars in the bank at that time, but they didn't care. They are members of the racist Japanese network.

65. Certainly the CIA, the FBI, DHS, Diebold and SAIC all know what is going on if not actively participating.    But I have request PRA, public Records Acts and FOIAs with all of those organizations and more and have been denied by them all.    I've even been stalked, harassed and tortured by a SDPD helicopter as was heading into get a PRA on the officers from SDPD who had impounded my car as I was headed into get discovery on the officers who had illegally searched me, the day after I got my ticket for driving about 70 on I-5 in Carlsbad and when I went into court to have the charges dropped, my camera got confiscated. "The first time I've heard of that in years." I was told.    And the small claims judge acted just like a Japanese yakuza racist judge and misapplied the law about the unlawful impound. I'm back in appeals court as well because that judge wouldn't allow me any statutory mandatory discovery, and wouldn't even let my video tape of the cops illegally searching me into evidence until he had dismissed the vast majority of my valid claims.    That's three court actions in the USA, zero justice again. And the hits, and abuse and torture just keeps coming.

66. And still the police harass. Police in the Lorain City, Ohio. Police in Cleveland, Ohio. Police in Arizona.

67. They are far from the only ones.    I am followed by other "agents" or something.    I have been slandered, libeled, defamed and then discriminated against. LAPD has followed me around. Eric Chow, who now works getting Chinese students into the U.S. to get MBAs and contribute to the hollowing out of U.S. industry and Ken Mukai both have met with me, basically telling me I shouldn't be here. When I went with Eric to San Francisco to stay at his brother-in-law George's house police in San Jose and San Francisco stalked me as I was trying to find legal representation. Everyone was mad at me, though I told

- Page 23 of 51 -

1    them I would be out, OK, and they should have had no way of knowing about the police.

2    Or did they? On information and belief, I know they did.

3    68.    San Diego. Everywhere. Work environments are the best.    San Diego PD and ABLE

4    and ASTREA and the San Diego County Sheriffs. Many places, many times, lots of

5    harassment. And my ballot to vote and court documents.    The San Diego County Board

6    of Registrars also is liable. Those things keep disappearing in the mail here as well.

7    Could be me or it could be something pertinent when Dewey the Asian gets assigned to

8    my place just after I move in and two ballots and insurance papers, and court documents

9    and a notice of a credit report all never get delivered. On information and belief I know it

10    was no coincidence that the Postal Service and the cop who cuffed me were Asian. In

11    Japan it was Sagawa Takyubin with their bar codes RFIDs and tracking devices who

12    were always spying on me, monitoring, stalking.    On information and belief this

13    Plaintiff alleges the Post Office here as well as interfered with his life, caused damage

and suffering and severe emotional distress.

14
15    69.    San Diego State University Police, the University itself and Professor Matlin who kicked

me out of one class, tried to kick me out of another and refused week after week to

16    review my work unless I would insist on it.    I finally gave up on the elitist,

17    discriminatory bore.

18    70.    Finally the San Diego County Democratic Party, Organizing for America and the

19    Democratic National Committee. Margarita Cortez, Allie someone and Bernard Coleman.

20    I was accused of Stealing a license, then again and again. And again. Then zero

21    recognition of the offense, let alone an apology.    Allie used this as an excuse to have me

22    "fired" before I was even hired.    She obtained private information on me on the pretense

23    of "vetting" me. Yet no disclosure were ever given to me, I signed no documents, (though

24    Allie wanted me to sign a three page non-disclosure and non-competition form on the

25    spot after I was supposedly hired. Two days later she informed me after another

26    accusatory 20 minute grilling that at 8 pm that I wasn't going to be paid for that day. Two

27    days later she claimed some one found out I was a criminal, though there were no

28    document ever produced, nothing conveyed to me about what or who was slandering me,

-    Page 24 of 51 -

1    and zero right to any appeal or correction. Finally almost two months later on much effort

2    on my part Mr. Coleman finally sent me my report by e-mail and informed me they were

3    not a Credit Reporting Agency, they had not complied with the law, they had not

4    disclosed to me my rights or gotten written permission to invade my privacy, had not

5    given me a form to sign requesting a copy of my "report" be supplied to me within 3

6    business days, then he hung up on me.

7    71.    I'll sue them and Vice President Cheney and President Bush for creating this false

8    Homeland Security monster, which is burying all of our Constitutional rights and the very

9    ideas of liberty, democracy and justice so many have died for all these many, many years.

10    ## CAUSES OF ACTION

11    72.    Plaintiffs' causes of action arise under and violate the following laws,
12            agreements, conventions, resolutions, and treaties:

13    (a) Alien Tort Statute, 28 U.S.C. ß 1350;

14    (b) Torture Victim Protection Act, 28 U.S.C. ß 1350;

15    (c) Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or
16            Punishment G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc.
            A/39/51 (1984), entered into force June 26, 1987;

17
18    (d) International Covenant on Civil and Political Rights, G.A. res. 2200A (XXI), 21 U.N.
        GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, entered into force
19        Mar. 23, 1976;

20    (e) International Covenant on Economic, Social and Cultural Rights, G.A. res. 2200A (XXI), 21
21            U.N.    (Dec. 16, 1966), entered into force Jan. 3, 1976;

22    (f) Universal Declaration of Human Rights (1948) G.A. res. 217A (III), U.N. Doc A/810 at 71;

23    (g) Charter of the United Nations (1945), adopted June 26, 1945, 59 Stat. 1031, T.S. 993, 3
24            Bevans 1153 (entered into force October 24, 1945);

25    (h) U.S. – Japan Treaty of Friendship, Commerce and Navigation, (Entered into force October
26        30, 1953);
      (i) U.S. – Japan Partnership for Growth, (ratified on June 30, 2001);

27    (j) 28 U.S.C. ß 1605 (a) (Exceptions to Foreign States Immunities);

28

(k) 42 U.S.C. ß 1983, (Various Violation of Constitutional &/or Civil Rights, and Custom, Policy and Practices)

(l) 18 U.S.C. ß 241, (Conspiracy Against Civil Rights);

(m) 18 U.S.C. ß 242, (Deprivation of Rights Under Color of Law);

(n) 15 U.S.C. ß 1681, (Fair Credit Reporting Act) & CA Civil Code ßß1786.10-40 &

1798.53-56

(o) CA Penal Code ß 646.9, & Civil Code ßß 1708.7 & 527.6, Prohibitions Against Stalking

(p) 18 U.S.C. ßß 1029, 1030 & 1037, Computer, E-mail, Banking Fraud, Invasion of Privacy, Unlawful Access &/or Denial of Access, & CA Penal Code ß 132-141 & 182-185, Falsifying Evidence & Conspiracy and/or Aiding and Abetting

(q) 42 U.S.C. ß 3631, (Interference with Right to Fair Housing);

(r) 42 U.S.C. ß 14141, (Patterns & Practice) & 42 U.S.C. Section 3789d ("Safe Streets Act",)

(s) The Electronic Communications Privacy Act, 18 U.S.C. ß 2701, ß 2702, and ß2511; and

(t) Statutes and common law of the State of California, including but not limited to assault and battery, discrimination, prohibitions against stalking, falsifying evidence, conspiracy and/or aiding and abetting, false imprisonment, negligence, negligent supervision, respondeat superior, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, invasion of privacy, defamation and unfair business practices.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
(Torture, a Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)
(By John B. Kenney Against All Defendants)

73. Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this First Claim for Relief.

74. The Defendants' acts described in this Complaint caused direct and severe physical and mental pain and suffering to the Plaintiff(s) and placed him/them at severe risk of personal injury and/or death in connection with their participation in, and support of, the peaceful exercise of one's rights of free speech and communication, free association, and the right to hold, exercise and express hone's political beliefs, to own businesses, to engage in commerce free of discrimination, harassment, interference and civil rights abuses.

75. Because the acts enabled by Defendants as described herein violated multiple provisions prohibiting torture on an absolute basis, and protectionist practices and discrimination, including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, protectionism and discrimination, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against torture, protectionism and discrimination, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute tort[s] ... committed in violation of the law of nations or a treaty of the United States under the Alien Tort Statute (ATS), 28 U.S.C. ß 1350.

76. These acts also specifically constitute torture, protectionism and discrimination in violation of the Torture Victim Protection Act (TVPA), 28 U.S.C. ß 1350.

77. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aided and abetted and/or ratified these acts of torture, protectionism and discrimination in violation of international, federal, and state law. These violations and actions meet the definition of torture, protectionism and discrimination under the meaning of the TVPA, the ATS, and international treaties and U.S. laws and regulations, as well as customary international law, which condemn torture, protectionism and discrimination on an absolute basis, irrespective of the reasons why the abuses are inflicted.

78. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

79. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

80.  The Plaintiff(s) are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

SECOND CLAIM FOR RELIEF
(Cruel, Inhuman or Degrading Punishment or Treatment or Punishment, Violations of International Law for Which the Alien Tort Statute Provides Relief
(By John B. Kenney and Other Plaintiffs Against All Defendants)

81.  Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Second Claim for Relief.

82.  These acts of cruel, inhuman, or degrading treatment or punishment suffered by the Plaintiff(s) designated in this Second Claim for Relief, including physical injury and the severe physical and mental suffering associated therewith, were inflicted upon him/them by the joint and collusive actions of the Defendants and Japanese government officials acting under color of law, through unlawful or unauthorized actions prohibited by international law.

83.  These acts had the intent and the effect of grossly humiliating, debasing, intimidating, and punishing the Plaintiff(s), forcing him/them to act against his/their will and conscience, inciting fear and anguish, and seeking to break his/their physical and/or moral resistance.

84.  These acts of cruel, inhuman, or degrading treatment or punishment were inflicted on the Plaintiff(s) for purposes that include, among others, preventing him/them from exercising his/their free speech and free association rights, and punishing him/them for exercising his/their right to have and communicate political beliefs, to own businesses, to engage in commerce free of discrimination, harassment, interference and civil rights abuses.

85.  Because the acts described herein violated the prohibitions against cruel, inhuman, or degrading punishment or treatment including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment,

protectionism and discrimination, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman or degrading treatment or punishment, protectionism and discrimination, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute tort[s] ... committed in violation of the law of nations or a treaty of the United States under the Alien Tort Statute, 28 U.S.C. ß 1350.

86.    Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

87.    Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

88.    The Plaintiff(s) are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

THIRD CLAIM FOR RELIEF
(Arbitrary Arrest and Prolonged Invasion of Privacy, Surveillance, Interference and Detention, all Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

89.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Third Claim for Relief.

90.    These acts of arbitrary arrest and long-term detention suffered by the Plaintiff(s) designated in this Third Claim for Relief, including arrest and detention for an unlawful purpose in violation of the rights to freedom of speech, association, and assembly, to own businesses, to engage in commerce free of discrimination, harassment, interference and civil rights abuses, were inflicted upon him/them by the joint and collusive actions of the

Defendants and government officials acting under color of law, albeit through unlawful or
unauthorized actions and for unlawful and unauthorized purposes.

91.   These acts caused direct physical and mental pain and suffering upon the Plaintiff(s),
caused loss of liberty and property, and placed him/them at severe risk of personal injury
in connection with their participation in, and support of, the peaceful exercise of their
rights of free speech and free association, and their rights to hold, exercise and express
their political beliefs, to own businesses, to engage in commerce free of discrimination,
harassment, interference and civil rights abuses.

92.   Because the acts described herein violated provisions prohibiting arbitrary arrest and
prolonged invasion of privacy, surveillance, interference and detention including: (1)
treaties binding on the United States, (2) statutes adopted by the Congress of the United
States implementing those treaty obligations, (3) international and domestic judicial
decisions applying and interpreting the prohibition against arbitrary arrest and prolonged
invasion of privacy, surveillance, interference and detention, (4) administrative
regulations and international and domestic judicial decisions applying and interpreting
the prohibition against arbitrary arrest and prolonged invasion of privacy, surveillance,
interference and detention, and (5) a number of specific, universal, and obligatory
standards that are recognized to be part of customary international law, these acts
constitute tort[s] ... committed in violation of the law of nations or a treaty of the United
States under the Alien Tort Statute, 28 U.S.C. ß 1350.

93.   Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided
and abetted and/or ratified these abuses, and did not act to prevent or punish these
violations of laws, and /or human rights law as embodied in jus cogens, customary
international law, as well as federal and domestic law, and the laws of California.

94.   Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired
to &/or aiding and abetting and/or ratification of the commission of these abuses under
this cause of action.

95.    The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive

damages, in amounts to be established at trial, and to such other declaratory and/or

injunctive relief as may be deemed appropriate.

FOURTH CLAIM FOR RELIEF
(Battery)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

96.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in

paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Fourth Claim

for Relief.

97.    On information or belief, Defendants intentionally committed acts that resulted in

harmful or offensive treatment of Plaintiffs' person(s), and produced bodily harm.

Plaintiff(s) did not consent to the contact and treatment that caused injury, damage, loss

or harm to Plaintiff(s).

98.    The acts described constitute battery, actionable under the laws of California and the

United States.

99.    Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided

and abetted and/or ratified these abuses, and did not act to prevent or punish these

violations of laws, and /or human rights law as embodied in jus cogens, customary

international law, as well as federal and domestic law, and the laws of California.

100.    Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired

to &/or aiding and abetting and/or ratification of the commission of these abuses under

this cause of action.

101.    The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive

damages, in amounts to be established at trial, and to such other declaratory and/or

injunctive relief as may be deemed appropriate.

FIFTH CLAIM FOR RELIEF
(Assault)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

102.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in

paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Fifth Claim

for Relief.

COMPLAINT FOR TORT

103. On information or belief, Defendants' conduct caused Plaintiff(s) to be subjected to numerous batteries and/or intentional invasions of his/their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendants had a present ability to subject Plaintiff(s) to immediate, intentional, offensive and harmful touching.

104. The acts described herein constitute assault, actionable under the laws of California and the United States.

105. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

106. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

107. The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

SIXTH CLAIM FOR RELIEF
(False Imprisonment)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

108. Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Sixth Claim for Relief.

109. On information or belief, Defendants intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain or confine Plaintiff(s) on an arbitrary and unlawful basis. The restraint, detention or confinement compelled Plaintiff(s) to stay or go somewhere against his/their will for some appreciable time. Plaintiff(s) did not consent to this restraint, detention or confinement.

110. Defendants' actions constituted false imprisonment under standards of law applied by California and the United States.

COMPLAINT FOR TORT

111.   Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

112.   Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

113.   The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

SEVENTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

114.   Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in 1 through 71 of this Complaint as if fully set forth herein in this Seventh Claim for Relief.

115.   On information or belief, Defendants intended to cause Plaintiff(s) to suffer emotional distress, or, in the alternative, (a) Defendants engaged in the conduct adversely affecting Plaintiff(s) with reckless disregard of the high probability that it would cause Plaintiff(s) to suffer severe abuses and emotional distress, (b) Plaintiff(s) were present at the time the outrageous conduct and these results occurred and (c) the Defendants knew that Plaintiff(s) were present and would be adversely affected.

116.   Plaintiff(s) suffered severe abuse and emotional distress as a result of the conduct of the Defendants.

117.   Defendants' conduct constitutes the intentional infliction of emotional distress and is actionable under the laws, standards, and causes of action as set forth in this complaint.

118.   Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

119.    Defendants are liable for directly and/or vicariously, and responsible for, and/or
        conspired to &/or aiding and abetting and/or ratification of the commission of these
        abuses under this cause of action.

120.    The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive
        damages, in amounts to be established at trial, and to such other declaratory and/or
        injunctive relief as may be deemed appropriate.

EIGHTH CLAIM FOR RELIEF
(Negligence)
(By John B. Kenney and Other Plaintiffs Against All Defendants)
121.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in
        paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Eighth Claim
        for Relief.

122.    On information or belief, Defendants failed to use ordinary or reasonable care in order to
        avoid injury to Plaintiff(s). Defendants' negligence was a cause of injury, damage, loss or
        harm to Plaintiff(s).

123.    As a result of these acts, Plaintiff(s) suffered harm including, but not limited to, severe
        emotional distress. Defendants' conduct constitutes negligence and is actionable under the
        causes of action as set forth in this complaint.

124.    Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided
        and abetted and/or ratified these abuses, and did not act to prevent or punish these
        violations of laws, and /or human rights law as embodied in jus cogens, customary
        international law, as well as federal and domestic law, and the laws of California.

125.    Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired
        to &/or aiding and abetting and/or ratification of the commission of these abuses under
        this cause of action.

126.    The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive
        damages, in amounts to be established at trial, and to such other declaratory and/or
        injunctive relief as may be deemed appropriate.

NINTH CLAIM FOR RELIEF

- Page 34 of 51 -

COMPLAINT FOR TORT

1  (Violation of the California Business & Professional Code ßß 17200 et seq., Unfair Business
   Practices)

2  (By John B. Kenney and Other Plaintiffs Against All Defendants)

3  127.   Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in

4          paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Ninth Claim

5          for Relief.

6  128.    Plaintiff(s) bring this cause of action on behalf of him/themselves, pursuant to Business

7          and Professions Code ß 17204. The Defendants' conduct as alleged herein has been and

8          continues to be deleterious to Plaintiff(s), and Plaintiff(s) is/are seeking to enforce

9          important rights affecting the public interest within the meaning of the Code of Civil

10         Procedure ß 1021.5.227. Plaintiff(s) also seek compensation for the loss of property and

11         the personal financial impacts he/they have suffered as a result of Defendants' unfair

12         business practices.

13 129.    The California Business and Professions Code ßß 17200 et seq. prohibits unfair

14         competition, defined as any unlawful, unfair, or fraudulent business act or practice. These

15         acts or practices consist of those forbidden by law.

16 130.    The unlawful, unfair, and fraudulent business acts and practices described herein

17         constitute ongoing and continuous unfair business practices within the meaning of

18         Business and Professions Code ßß 17200 et seq., as they are prohibited by state, federal,

19         and international laws including but not limited to: (1) Electronic Communications

20         Privacy Act, 18 U.S.C. ß 2701 et seq.; (2) Alien Tort Statute, 28 U.S.C. ß 1350; (3)

21         Torture Victim Protection Act, 28 U.S.C. ß 1350; (4) 18 U.S.C. ß 2450 (federal statute

22         criminalizing torture); (5) Convention Against Torture and Other Cruel, Inhuman, or

23         Degrading Treatment or Punishment; (6) International Covenant on Civil and Political

24         Rights; (7) Universal Declaration of Human Rights; (8) Charter of the United Nations;

25         and (9) Statutes and common law of the State of California, including but not limited to

26         assault and battery, false imprisonment, negligence, intentional infliction of emotional

27         distress, and negligent infliction of emotional distress. Defendants' acts described herein

28         also violate universal, specific, and obligatory customary international law, which

COMPLAINT FOR TORT

prohibit aiding and abetting, and conspiracy to commit, violations of jus cogens human rights norms.

131.    Defendants practices described herein offend established public policies and involve business practices that are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

132.    Such practices include, but are not limited to, the unwarranted provision of internet users' private electronic communication information or records in order to be permitted to engage in business in China and Japan, with the knowledge that such information would substantively support the torture, battery, threats, and further intimidation of persons who used Defendants' services in Japan, the U.S. or China. Members of the public have been in the past and will in the future likely be damaged by these practices.

133.    Defendants have also acted contrary to public policy by infringing upon the freedom of speech and expression of the general public, to own businesses, to engage in commerce free of discrimination, harassment, interference and civil rights abuses. Members of the public have been in the past and will in the future likely be harmed by these practices.

134.    Pursuant to the conduct as alleged herein, Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and constitutes clear violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

135.    The furtherance of Defendants' role in the stream of commerce by providing information which results in the aforementioned business practices creates an unfair business advantage over competitors that do not utilize such practices from within California and the United States.

136.    Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

137.    Plaintiffs seek injunctive relief, disgorgement of all profits resulting from these unfair business practices, restitution and other appropriate relief on behalf of themselves and members of the general public as provided in Business and Professions Code ß 17203.

TENTH CLAIM FOR RELIEF
(Violation of the Electronic Communications Privacy Act, 18 U.S.C. ß 2701, ß2702, and ß2511, Unlawful Access to Stored Communications)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

138.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Tenth Claim for Relief.

139.    Upon information and belief, Defendants violated the rights of Plaintiffs herein by intercepting, disclosing, and/or intentionally using electronic communication between Plaintiffs and other persons. The right of a civil action arises under 18 U.S.C. 2707(a), which provides that any person aggrieved by any violation of the Electronic Communications Privacy Act, in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from any person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

140.    Defendants exceeded their authorization to access and control private information concerning Plaintiffs electronic communications, in violation of 18 U.S.C. ß 2701.

141.    Defendants unlawfully and knowingly divulged Plaintiffs electronic communication contents and user information, in violation of 18 U.S.C. ß 2702.

142.    Defendants intentionally acquired and/or intercepted the contents of electronic communications sent by and/or received by Plaintiff(s) through the use of an electronic device. Defendants intentionally acquired the communications that had been sent from or directed to Plaintiff(s) through their use of computers and other electronic devices which were part of, and utilized in, Defendants' electronic communications system, in violation of 18 U.S.C. ß 2511 and pursuant to 18 U.S.C. ß 2520.

143.    Defendants unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their business in Japan and China. This

1  disclosure was not necessary for the operation of Defendants' system or to protect

2  Defendants' rights or property.

3  144.  Plaintiffs are person[s] whose electronic communication is intercepted or intentionally

4  used in violation of this chapter within the meaning of 18 U.S.C. ß 2520.

5  145.  Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided

6  and abetted and/or ratified these abuses, and did not act to prevent or punish these

7  violations of laws, and /or human rights law as embodied in jus cogens, customary

8  international law, as well as federal and domestic law, and the laws of California.

9  146.  Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired

10  to &/or aiding and abetting and/or ratification of the commission of these abuses under

11  this cause of action.

12  147.  Plaintiffs therefore seek remedy as provided for by 18 U.S.C. ß 2520, including such

13  preliminary and other equitable or declaratory relief as may be appropriate, damages

14  consistent with subsection (c) of that section to be proven at trial, punitive damages to be

15  proven at trial, and a reasonable attorney's fee and other litigation costs reasonably

16  incurred.

ELEVENTH CLAIM FOR RELIEF

17  (42 U.S.C. Sec. 1983, Civil Rights Violations: Unlawful Search & Seizure, Excessive Force,
Retaliation, Violation of Rights to Counsel, Privacy, Freedom of Movement, from Cruel
18  & Unusual Punishment and Malicious Prosecution, 18 U.S.C. ß 241, Conspiracy Against
19  Civil Rights, 18 U.S.C. ß 242, Deprivation of Rights Under Color of Law)

20  148.  Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

21  paragraphs 1 through 71 of this Complaint as if fully set forth herein in this First Claim

22  for Relief.

23  149.  The right of a civil action arises under 42 U.S.C. 1983, which provides that any person

24  aggrieved by any violation of their civil rights, may, in a civil action, recover from any

25  person or entity which engaged in that violation such relief as may be appropriate.

26  150.  By the acts alleged above, all Defendants, including all of the police officers and public

27  officials of various states, were involved in various unlawful proceedings, including the

28  unlawful curbside arrest of the Plaintiff, as alleged in paragraphs 1-70, above.   All of

COMPLAINT FOR TORT

their supervisors responsible for the hiring, training, evaluation and disciplining of the officers on site, were acting under the color of the law.    Further, the Plaintiff was unlawfully arrested and his body and possessions unlawfully seized and searched without a warrant or any probable cause.    All Defendants created a "special relationship" with the Plaintiff primarily on concocted and false grounds, and then aggressively and unlawfully pursued abusing the Plaintiff, both negligently and with intentional malice, interference, cruelty and oppression in mind.    The Defendants acted in outrageous manner and with excessive force in their totally malicious and reckless disregard of the rights, safety and peace of mind of the Plaintiff.    Their acts of intimidation, threats and coercion were unconstitutional.    As a proximate cause/result of the Defendants' myriad unlawful actions, the Plaintiff has suffered, and continues to suffer, great damages, much mental anguish, and physical and emotional distress, and many other injuries as alleged herein, therefore the Plaintiff is entitled to damages pursuant to 42 U.S.C. Section 1983, et seq. in an amount to be proven at trial.

151.    Plaintiff has suffered violations of his constitutional rights guaranteed by the First (1st) Amendment, Fourth (4th) Amendment, Fifth (5th) Amendment, Sixth (6th) Amendment, Eighth (8th) Amendment, Ninth (9th) Amendment and the Fourteenth (14th) Amendment, as well as Article Four (4) of the United States Constitution.

152.    As a further result of these acts of the Defendants' the Plaintiff suffered false and/or malicious prosecution, (See paragraphs 1-70 above) in retaliation for exercising First Amendment rights to defend his rights to be free of false stops and/or arrests, unreasonable seizures, searches and/or due process of the law as guaranteed by the Fourth (4th) and Fourteenth (14th) Amendments of the U.S. Constitution.    As a result of the unlawful acts of the Defendants described herein, the Plaintiff has and still is suffering much emotional distress, humiliation and embarrassment and is entitled to damages pursuant to 42 U.S.C. Section 1983, et seq. to be proven at trial.

153.    Defendants' myriad unlawful actions set herein, include, but are not limited to abusive acts by Defendants' of monitoring, stalking and staking out Plaintiff.    As a result of the seemingly permanent loss of all of these Constitutional right, 24/7, 365 days a year, for

COMPLAINT FOR TORT

years on end now, Plaintiff has suffered, and is still suffering, great damages, much
mental anguish, and physical and emotional distress.    The Plaintiff is entitled to
damages pursuant to 42 U.S.C. Section 1983, et seq. in an amount to be proven at trial.

154.    Plaintiff is informed and believes, and thereon alleges, the Defendants, and each of
them, acting under the color of law, had a duty of care and were responsible for his safety
and protection, and thus required to adhere to lawful due process and equal protection
under the law.    Defendants, and each of them, abused and violated the numerous
Constitutional rights of the Plaintiff herein alleged, and other laws of the U.S. pursuant to
the pattern and practice provisions of the Violent Crime Control and Law Enforcement
Act, 42 U.S.C. Section 14141 (1994) and the Omnibus Crime Control and "Safe Streets
Act", 42 U.S.C. Section 3789d (1968).    As a proximate cause/result, Plaintiff has
suffered, and continues to suffer, great damages, much mental anguish, and physical and
emotional distress, and many other injuries alleged herein, therefore the Plaintiff is
entitled to costs, legal fees, injunctive relief and damages pursuant to 42 U.S.C. Section
1983, et seq. in an amount to be proven at trial.

155.    Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided
and abetted and/or ratified these abuses, and did not act to prevent or punish these
violations of laws, and /or human rights law as embodied in jus cogens, customary
international law, as well as federal and domestic law, and the laws of California.

156.    Defendants are liable for directly and/or vicariously, and responsible for, and/or
conspired to &/or aiding and abetting and/or ratification of the commission of these
abuses under this cause of action.

157.    In committing the intentional, extreme and unlawful acts alleged above, the Defendants,
and each of them, under the color of law, conspired against him, acted so outrageously
and maliciously toward the Plaintiff, with fraud and/or oppression in mind, that they were
guilty of wanton and reckless disregard for the rights, feelings, property, safety and
emotional state of the Plaintiff and actually and proximately caused the Plaintiff to suffer
severe humiliation, mental anguish and emotional and physical distress.    By reason

1  thereof the Plaintiff is entitled to costs, legal fees, injunctive relief, exemplary and

2  punitive damages in an amount to be proven at trial.

3  TWELFTH CLAIM FOR RELIEF
(42 U.S.C. Sec. 1983, UNLAWFUL POLICIES, CUSTOMS OR HABITS, 42 U.S.C. ß 14141,
4  Patterns & Practice, 18 U.S.C. ß 241, Conspiracy Against Civil Rights, 18 U.S.C. ß 242,
5  Deprivation of Rights Under Color of Law)

158.  Plaintiff realleges and incorporates by reference each and every allegation contained in

6  Paragraphs 1 through 71 above, as if fully set forth herein.

7  159.  On information or belief, Plaintiff alleges Defendants' intentionally or negligently

8  maintained unlawful policy, custom or habit of inadequate training, supervision and

9  discipline of errant officers, and permitting false arrests &/or imprisonment, arrests made

10  in retaliation for lawful exercise of Constitutional rights, under the laws of California and

11  the United States. This conduct caused Plaintiff(s) to be subjected to much hardship,

12  damages, emotional and mental distress, and suffering pain and humiliation.

13  160.  The acts described constitute the unlawful policy, custom or habit of inadequate

14  training, supervision and discipline of errant officers, and permitting false arrests &/or

15  imprisonment, arrests made in retaliation for lawful exercise of Constitutional rights,

16  under the laws of California and the United States.   Defendants' have violated or

17  abrogated this Plaintiff's rights as enumerated in the First (1st), Fourth (4th), Fifth (5th),

18  Sixth (6th), Eighth (8th), Ninth (9th) and Fourteenth (14th) Amendments and Article Four

19  (4) of the U.S. Constitution, namely the rights of freedom of speech, assembly and

20  association, the right to be free of unlawful searches and seizure, the right to due process

21  and equal protection under the law, the right to counsel, subject to unlawful and false

22  arrest and cruel and unusual punishment and the right to privacy and to move freely about

23  without interference, malicious prosecution and/or oppression, stalking or unlawful

24  detainment and/or interrogations.

25  161.  Plaintiff is informed and believes, and thereon alleges, the Defendants, and each of them,

26  acting under the color of law, were responsible for his safety and protection, required to

27  adhere to lawful due process and equal protection under the law. Defendants, and each of

28  them, abused and violated the numerous Constitutional rights of the Plaintiff herein

alleged, and other laws of the U.S. pursuant to the pattern and practice provisions of the *Violent Crime Control and Law Enforcement Act*, 42 U.S.C. Section 14141, (1994) and the *Omnibus Crime Control and "Safe Streets Act"*, 42 U.S.C. Section 3789d, (1968). As a proximate result of the Defendants' myriad unlawful actions set herein, the Plaintiff has suffered, and continues to suffer, great damages, much mental anguish, and physical and emotional distress, and many other injuries as alleged herein.

162. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

163. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

164. The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate. Plaintiff is entitled to costs, legal fees, injunctive relief, exemplary and punitive damages pursuant to 42 U.S.C. Section 1983, in an amount to be determined at trial.

THIRTEENTH CLAIM FOR RELIEF
[CAL. CIVIL CODE, Sections. 51 & 52- Civil Rights Violations & Respondeat Superior]
165. Plaintiff realleges and incorporates by reference, each and every allegation contained in Paragraphs 1 through 71 above, as though fully set forth herein.

166. Plaintiff alleges that Defendants, each of them, whether, a.) As officers under the color of law, or b.) As employers and/or supervisors with their respective supervisory or employment relationships to the officers, as named in the Second and Third Causes of Action, also under the color of law, and each of them, are responsible for the acts complained of herein, either directly or through vicarious liability, and as Defendants, the officers, and each of them, were the ostensible agents of the aforementioned supervisors and employers.

167. Pursuant to California Civil Code, (hereinafter "CCC"), Sections 51 & 52, particularly, but not limited to Secs. 51.1(b), 51.7, 52(b) & 52.1, Plaintiff alleges by the acts herein, particularly as alleged in paragraphs 10-23 above, the Defendants' wrongful conduct through the acts of unjustified, unreasonable and excessive force, false arrest, false and malicious prosecution, unlawful searches and seizures and multiple due process and equal protection violations, because of the Plaintiff's political affiliations, as alleged in paragraphs 10-23, herein, the Defendants discriminated against and interfered with, or attempted to interfere with the Plaintiff's freedom, and other inalienable rights, including but not limited to freedom of movement, defending life and liberty, possessing, and protecting one's property, pursuing and obtaining safety, happiness, public access, personal solitude and privacy, and the right to be secure in his body and possessions against unlawful contact, illegal searches and seizures, and other constitutional rights, as guaranteed by the California Constitution (Article I, Sections 1, 2, 3, 7, 13, 17, 24, 28 and 29) and the United States Constitution, as mentioned in the First Cause of Action, particularly the First (1st) Amendment, the Fourth (4th), Fifth (5th), Sixth (6th), Eighth (8th), Ninth (9), the Fourteenth (14th) Amendments and Article Four (4) of the Constitution.

168. Plaintiff further alleges the Defendants in supervisory and/or management, training, evaluation and/or disciplining relationships to the employee police officers, who were acting within the scope of their employment, are liable for actions and/or omissions of their employees and/or agents, pursuant to California Government Code section 815.2 & 820.4, and the doctrine of Respondeat Superior. (See Monell v. Department of Social Services (1978) 436 U.S. 658, in conjunction with Scott v. County of Los Angeles, 27 Cal.App.4th 125, 139-40, 32 Cal. Rptr.2nd 643 (1994), then Robinson v. Solano County (2002) 278 F. 3rd 1007, as well as Perez v. Van Groningen & Sons, Inc., 41 Cal. 3rd 962, 719 P. 2nd 676, 227 Cal. Rptr. 106 (1986).)

169. These wrongful acts by the Defendants were committed through threats of violence and intimidation, and/or the violence of fear, and/or apprehension and/or the violence of

COMPLAINT FOR TORT

actual trespass, contact and/or assault and battery, detention and false arrest as herein
alleged, in particular the retaliatory efforts of the Defendants to Quash the Plaintiff's First
Amendment rights to free speech through further detention and humiliation, threats,
intimidation and coercion and/or excessive force against the Plaintiff and his
Constitutional rights, culminating in an unlawful de facto curbside arrest.

170.    Plaintiff's complaint for damages is based on the unlawful acts of the Defendants, and
each of them, particularly, but not exclusively, as alleged in the paragraphs herein.

**171.**    In committing the intentional, extreme and unlawful acts alleged above, the Defendants,
and each of them, acted so outrageously, oppressively and maliciously toward the
Plaintiff, with fraud and/or oppression in mind, that they were guilty of wanton and
reckless disregard for the rights, feelings and emotional state of the Plaintiff and actually
and proximately caused the Plaintiff to suffer severe humiliation, mental anguish and
emotional and physical distress.    By reason thereof the Plaintiff is entitled to exemplary
and punitive damages in an amount to be proven at trial.

FOURTEENTH CLAIM FOR RELIEF
(15 U.S.C. ß 1681, Fair Credit Reporting Act & CA Civil Code ßß1786.10-40 & 1798.53-56)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

172.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in
paragraphs1 through 71 of this Complaint as if fully set forth herein in this Fourteenth
Claim for Relief.

173.    On information or belief, Defendants' intentionally committed used false pretenses in
order to invade Plaintiff's privacy, conducted an unlawful credit report investigation,
circulated false, damaging and slanderous information about the Plaintiff(s)without
written authorization, and/or notifying Plaintiff(s) of one's rights, disclosures, or the need
for a signed agreement, (not disclosed, asked for nor given) and then continuing to
slander Plaintiff, refusing to disclose the unlawfully obtained information and taking at
least two (2) retaliatory adverse actions against Plaintiff, based on slanderous information,
which never should have been obtained in the first place.    Defendants conduct caused
Plaintiff(s) to be subjected to numerous injuries and damages.

174. The acts described constitute numerous violations of the Fair Credit Reporting Act actionable under the laws of California and the United States.

175. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

176. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

177. The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

FIFTEENTH CLAIM FOR RELIEF
(42 U.S.C. ß 3631, Interference with Right to Fair Housing)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

178. Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Fifteenth Claim for Relief.

179. On information or belief, Defendants' intentionally interfered with Right to Fair Housing. This conduct caused Plaintiff(s) to be subjected to much hardship, damages, emotional and mental distress, and suffering pain and humiliation.

180. The acts described constitute Interference with Right to Fair Housing, actionable under the laws of California and the United States.

181. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

182. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

COMPLAINT FOR TORT

183. The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CA Penal Code ß 646.9, & Civil Code ßß 1708.7 & 527.6, prohibitions against stalking)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

184. Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Sixteenth Claim for Relief.

185. On information or belief, Defendants' intentionally committed stalked, monitored and surveilled Plaintiff(s), in addition to intentionally intimidating, threatening, harassing, interfering with, Plaintiff(s) life and civil rights. This conduct by the Defendants caused Plaintiff(s) much hardship, damages, emotional and mental distress, and suffering, pain and humiliation.

186. The acts described constitute unlawful stalking, actionable under the laws of California and the United States.

187. Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

188. Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

189. The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

SEVENEENTH CLAIM FOR RELIEF
(CA Penal Code ß 132-141 & 182-185, falsifying evidence & conspiracy and/or aiding and abetting)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

- Page 46 of 51 -

COMPLAINT FOR TORT

190.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this SEVENEENTH Claim for Relief.

191.    On information or belief, Defendants' intentionally falsified evidence & conspired and/or aided and abetted in falsifying evidence which caused Plaintiff(s) to be subjected to numerous injuries, and much damage, pain, mental distress and suffering.

192.    The acts described constitute falsifying evidence & conspiracy and/or aiding and abetting, actionable under the laws of California and the United States.

193.    Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

194.    Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

195.    The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

EIGHTEENTH CLAIM FOR RELIEF
(Computer, E-mail, Banking Fraud, Invasion of Privacy, Unlawful Access &/or Denial of Access
&/or Service(s), including to One's Own Accounts, Information and/or Monies and
Property, 18 U.S.C. ßß 1029, 1030 & 1037)
(By John B. Kenney and Other Plaintiffs Against All Defendants)

196.    Plaintiff(s) re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 71 of this Complaint as if fully set forth herein in this Eighteenth Claim for Relief.

197.    On information or belief, Plaintiff alleges, Defendants intentionally committed fraud, unlawful denial of services, and unlawful access of private information &/or accounts when Defendants unlawfully maintained or supervised Computer, E-mail, Banking services, committed Fraud, Invasion of Privacy, Unlawful Access &/or Denial of Access

&/or Service(s), including to this Plaintiff's Own Accounts, Information and/or Monies and Property. This conduct caused Plaintiff(s) numerous injuries, and much damage, pain, mental distress and suffering.

198.   The acts described constitute Computer, E-mail, Banking Fraud, Invasion of Privacy, Unlawful Access &/or Denial of Access &/or Service(s), actionable under the laws of California and the United States, Japan, China and customary international law.

199.   Defendants knowingly or negligently are responsible for, and/or conspired to &/or aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of laws, and /or human rights law as embodied in jus cogens, customary international law, as well as federal and domestic law, and the laws of California.

200.   Defendants are liable for directly and/or vicariously, and responsible for, and/or conspired to &/or aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

201.   The Plaintiff(s) is/are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN JAPAN and CHINA

202.   (137) These claims are not precluded by the need or failure to exhaust local remedies as set out in the Torture Victim Protection Act since Plaintiff(s) have made every effort to seek local remedies in Japan and the through various international and United States and/or California agencies, and these efforts have proven pointless and futile.

203.   Plaintiff John B. Kenney has attempted to utilize domestic remedies, pleading the laws of Japan, but the Japanese courts have ignored their own laws and stolen money, right to money and property from him and rejected his appeals in violation of Japanese and international law and have rejected all other efforts to challenge the actions taken against him. He exhausted all remedies available to him in the Japanese courts when the courts rejected his multiple appeals from 2001 to 2010.

204.   Any further efforts to obtain relief in Japan could well result in further serious reprisals against those making allegations of wrongdoing on the part of high-level officials or the

NPA or their yakuza or foreign intelligence service agents in Japan. High-level officials
of Japan are involved in the abuses alleged in this complaint and in the ratification of
these abuses. Taking into consideration that the Japanese government used the courts of
Japan to further oppress and steal from Plaintiff(s), using a highly controlled judicial
process to do so, and taking into account the Japanese government's refusal and/or
inability to properly and effectively investigate acts of torture, cruel, inhuman or
degrading treatment or punishment, and arbitrary arrest and prolonged detention and
bring the perpetrators to justice, and given further other substantial indicators of
governmental acquiescence in the violations of international law and its unwillingness to
support legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs,
efforts to secure remedies for them in the Japan, including lawsuits in Chinese courts,
must be considered futile.    The actions taken by the Japanese government to steal
monies in the form of taxes, and collusion to prevent Plaintiff from obtaining his own
money further indicate the futility of using the Japanese judicial system to secure relief.

205.    For these reasons, requirements for further exhaustion of efforts to obtain local relief
should be considered waived and satisfied.

STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)

206.    143. Due to the unique circumstances of this case, specifically the fact that a substantial
amount of the information is unavailable without the Defendants' cooperation, the factual
allegations in various paragraphs are made because they are likely to have evidentiary
support after a reasonable opportunity for further investigation or discovery pursuant to
Rule 11(b)(3). Fed. R. Civ. P. 11(b)(3)

### PRAYER FOR RELIEF

207.    WHEREFORE, this Present Plaintiff prays: To the multitude of officials and
"professionals" whom have contributed to his oppression, in whatever
perfunctory or incriminatory manner, under the color of one "just doing my
job"- this Present Plaintiff prays that they remember the lessons of
Nuremberg. Whether through direct or indirect involvement, whether

1  through willful and heinous forethought or as instruments of an irresistible
2  police state, security apparatus, bureaucratic creep· all who participate in
3  criminal activity are equally incriminated in the final result.   This Present
4  Plaintiff has been, and is being wronged by this willful and negligent
5  "professional" oppression. Though he has learned to adapt to these foul
6  actions, they have and they continue to cause him great pain.

7  208.  I pray we can collectively restore those powers of balance and justice we
8  seemed to have mislaid.

9  209.  If the officials of Japan and/or the United States ·the two most powerful
10  nations in history · have individually or in networked orchestration, decided
11  my injuries are to be ignored; that I am to continue to be ostracized, stalked
12  and harassed...

13  210.  Then what can I do?   How can I defend my sanity, let alone my liberty?

14  211.  Alone, I pray that the professional souls assigned to my watch can set aside
15  their blind, irresistible sense of governmental avalanche to reflect and
16  understand the source of my pain, the torment I have survived to date.

17  212.  This is not the promise of America we all once envisioned and were taught to
18  believe in.

19  213.  For America did indeed once shine that promise... "Life, liberty and the
20  pursuit of happiness", did indeed once promulgate the truth, "All men, women
21  and children, are created equal". Did formerly stand tallest and proudest in
22  defense of human rights and dignity.   When we have refound our voice of
23  Liberty, true Democracy and universal human rights and dignity, then we
24  will lead the world in economic strength again as well. But hardly until that
25  time.

26  214.  I know I am a small pathetic man. Even my own brother labels me
27  unimportant.   I am a man who can't even persuade those he believes in to
28

1   allow him within their proximity. Not even if I try to give away my work as a

2   volunteer.   I am a man whom all around feel it is proper and fitting to

3   disparage and defame.   Or worse.

4   215.   But I pray that we can at least recognize, before it is too late, that even one as

5   lowly as myself is worthy of justice, due process, certain privacies and

6   constitutional guarantees. Certain aspirations that have been crafted,

7   hammered out and enshrined as the "law of nations".

8   216.   I pray that we can find our way to lead this world of nations towards progress

9   and freedom again. Not just of technology, oil and gold.   But of the very

10   fabric of our humanity. For I know I cannot live this shunned, hibernated

11   existence of a cyberslave to police state powers that have lost the way.   I

12   cannot stop but to defend the last vestiges of freedom I have, even if it is to

13   my death.   I pray that freedom does not die.

14   217.   And WHEREFORE, the Plaintiffs pray for judgment against all Herein

15   Named Defendants and Other Presently Unnamed and To Be Identified

16   Corporate Defendants and Presently Unnamed and to be Identified

17   Individual Employees of Said Corporations, as follows:

18
19   (a) For actual and compensatory damages to each of the Plaintiffs according to proof to be
       established at trial;

20   (b) For punitive and exemplary damages according to proof to be established at trial;

21   (c) For declaratory relief determining that the actions of the Defendants constituted violations of
       international law, specifically, that such violations included prohibited acts of torture,
22     cruel, inhuman or degrading treatment, and arbitrary arrest and prolonged detention for
23     the peaceful and exchange of ideas, views, and political beliefs in violation of the
       Convention Against Torture, numerous other international treaty obligations binding on
24     the United States, and domestic laws and regulations implementing such standards,
25     including the Torture Victim Protection Act, and other enumerated causes of action in
       this Complaint;
26
27   (d) For affirmative action by the Defendants to secure the release of the detainees;

28

1  (e) For injunctive relief to stop any further disclosures of user information in order to prevent

2        such aforementioned abuses from taking place in the future;

3  (f) For costs of the litigation, including, attorneys fees; and

4  (g) For any such other relief which the Court shall deem appropriate, just and proper.

5

6                              DEMAND FOR JURY TRIAL

7  218.    Plaintiff hereby requests a jury trial on all issues raised in this complaint.

8

9

10

11  DATED:  June 27th, 2011              Respectfully Submitted,

12  _____

                                        John B. KENNEY, In Pro Se/ In Pro Per

13

COMPLAINT FOR TORT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV11- 5341 DMG (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)

John B. Kenney
En Pro Per

**DEFENDANTS**

Japan, et al

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

John B. Kenney   (619) 269-1775
PO Box 7314
San Diego, CA 92167

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☒6 |

**IV. ORIGIN** (Place an X in one box only.)

☒1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (specify):   ☐6 Multi-District Litigation   ☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** over $ 250,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC. 1350, 42 USC. 1983, others

**VII. NATURE OF SUIT** (Place an X in one box only.)   Alien Tort Statute, Torture Victim Protection Act, Civil Rights

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV11-05341**

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                   CIVIL COVER SHEET                   Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No  ☑ Yes  2:11-cv-00630-UA
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes  2:11-cv-00630-UA
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | San Diego County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | San Diego County, Mateo County, Sacramento County, Japan, China, Austria, UK, Arizona, Ohio |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | San Diego County, Mateo County, San Francisco County, Japan, China, Indonesia, Arizona, Ohio |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date: 6/27/2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 2 of 2